UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NITZAN BRADIN,                                                                              Case Number:

                              Plaintiff,

           -v-                                                                            **COMPLAINT WITH**
                                                                          **JURY DEMAND**

COADVANTAGE RESOURCES INC., COADVANTAGE
RESOURCES 23 INC. and BRIAN FINKEL,

                              Defendants.
------------------------------------------------------------------X

      Plaintiff, NITZAN BRADIN ("Mr. Bradin" or "Plaintiff"), by and through their attorneys, THE LAW OFFICES OF WILLIAM CAFARO, complaining of the Defendants, and each of them, hereby alleges as follows upon information and belief:

## NATURE OF CASE

      1.     This is action is brought pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. 2601 *et seq*. ("FMLA"), the New York State Human Rights Law, New York Exec. Law § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, as amended, including The Local Civil Rights Restoration Act, effective October 3, 2005, as well as Local Laws 1, 34, 35, 36, 37, 38, and 40 of 2016 ("NYCHRL"), and other appropriate rules, regulations, statutes and ordinances.

      2.     Mr. Bradin claims that Defendants have discriminated and retaliated against him on the basis of his disability and for enforcing his federally protected rights.

## JURISDICTION AND VENUE

3. Jurisdiction is based upon 28 U.S.C. § 1331, insofar as it involves statutes of the United States, specifically, the FMLA, 29 U.S.C. §2601, *et seq*. Plaintiff relies upon 28 U.S.C. § 1367 to invoke supplemental jurisdiction with respect to the New York causes of action which form other bases for recovery upon the same factual nexus, specifically Plaintiff's NYSHRL and NYCHRL claims.

4. Plaintiff further and alternatively invokes 28 U.S.C. § 1332, insofar as it involves a Defendants who are citizens of New York and Florida for the purposes of diversity jurisdiction and a Plaintiff who is a citizen of the state of New Jersey for the purposes of diversity jurisdiction.

5. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

6. Venue is based upon 28 U.S.C. § 1391(b)(2), insofar as all of the events giving rise to the within causes of action occurred in this Judicial District.

## ADMINISTRATIVE PROCEDURES

7. Prior to the filing of this lawsuit, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against the entity Defendants for their violations of Americans with Disabilities Act.

8. Plaintiff has not yet received a Notice of Right to Sue from the EEOC.

9. Plaintiff reserves the right to amend this complaint to add causes of action under the Americans with Disabilities Act within 90 days of receiving a Notice of Right to Sue from the EEOC.

10. Plaintiff served a copy of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York in accordance with N.Y.C. Admin. Code § 8-502(c).

11. Any and all prerequisites to the filing of this suit have been met.

## THE PARTIES

12. Mr. Bradin is an individual residing in Hawthorne, New Jersey.

13. At all times herein pertinent, Mr. Bradin was an "employee" of the Defendants, within the meaning of FMLA, 42 U.S.C. §2611(2)(A), NYSHRL, N.Y. Exec Law §292(6), and the NYCHRL, N.Y.C. Admin. Code § 101 *et seq*.

14. At all times herein pertinent, Plaintiff was a "person" within the meaning of FMLA, 29 U.S.C. §2611(8), the NYSHRL, N.Y. Exec Law §292(1), and NYCHRL, N.Y.C. Admin. Code § 102(1).

15. The Defendant COADVANTAGE RESOURCES INC (hereinafter "CoAdvantage Resources") was and is a foreign business corporation created under the laws of the state of Florida.

16. CoAdvantage Resources has a principal place of business located at 101 Riverfront Blvd., Suite 300, Bradenton, Florida 34205.

17. CoAdvantage Resources was and is an "employer" of the Plaintiff as that term is defined in the FMLA, 29 U.S.C. §2611(4) and upon information and belief had fifty (50) or more persons in its employ at all times herein pertinent.

18. At all times herein pertinent, CoAdvantage Resources was an "employer" of the Plaintiff as it is defined in N.Y. Exec Law §292(5), and in the NYCHRL, N.Y.C. Admin. Code § 102(5) and had four (4) or more persons in its employ at all times herein pertinent.

19. The Defendant COADVANTAGE RESOURCES 23 INC (hereinafter "CoAdvantage Resources 23") was and is a foreign business corporation created under the laws of the state of Florida.

20. CoAdvantage Resources 23 has a principal place of business located at 101 Riverfront Blvd., Suite 300, Bradenton, Florida 34205.

21. CoAdvantage Resources 23 was and is an "employer" of the Plaintiff as that term is defined in the FMLA, 29 U.S.C. §2611(4) and upon information and belief had fifty (50) or more persons in its employ at all times herein pertinent.

22.     At all times herein pertinent, CoAdvantage Resources 23 was an "employer" of the Plaintiff as it is defined in N.Y. Exec Law §292(5), and in the NYCHRL, N.Y.C. Admin. Code § 102(5) and had four (4) or more persons in its employ at all times herein pertinent.

23.     Brian Finkel ("Finkel"), as a Regional Sales Manager for the Entity Defendants had the authority to hire, fire, discipline, supervise, and direct Plaintiff, and administer the terms, conditions and privileges of his employment.

24.     Upon information and belief, Finkel's actual place of business is located at 100 Quentin Roosevelt Boulevard, Suite 502, Garden City, NY 11530.

25.     At all times herein pertinent, Defendant Finkel actually participated in the conduct giving rise to claims of discrimination alleged herein and is liable as an aider and abettor of unlawful conduct under the NYSHRL and NYCHRL.

*Interrelationship between the Entity Defendants*

26.     Upon information and belief, the entity Defendants operate as a single integrated enterprise along with other companies, for a joint business purpose.  As such, the entity Defendants have interrelated operations, centralized control of operations, common management, and common ownership and/or financial control.

27.     The entity Defendants share a common website, www.coadvantage.com, which allows users to learn about the enterprise's products, services and job openings.

28. The entity Defendants advertise and market to clients together through their shared website.

29. The entity Defendants advertise job openings together on their common website.

30. The entity Defendants use a common logo:

CoAdvantage®

31. Upon information and belief, the entity Defendants all use the same employee manuals, company letterhead, and payroll operations.

32. The entity Defendants have a common business purpose in that they are an outsourced Human Resources department for other businesses.

33. Upon information and belief, the entity Defendants share office space with one another, at 101 Riverfront Blvd., Suite 300, Bradenton, Florida 34205.

34. Upon information and belief, the entity Defendants have a centralized human resource department.

35. Upon information and belief, the entity Defendants have the same management team, including, but not limited to, sharing a President & CEO (Clinton Burgess) and Chief Financial Officer (Peter Grabowski),

36. The single integrated enterprise is controlled by the Management Team.

## *MATERIAL FACTS*

37. The entity Defendants are an outsourced Human Resources department for other businesses. In that role, they administer payroll, benefits, workers' compensation and core HR functions for other businesses.

38. Upon information and belief, all corporate decisions regarding the Plaintiff's employment including, but not limited to hiring, firing, paying, and administering the terms, conditions and privileges of Plaintiff's employment were made at 100 Quentin Roosevelt Boulevard, Suite 502, Garden City, NY 11530.

39. As explained more fully below, while working for the Defendants, Mr. Bradin was allowed to work from his home, which, at the time of his employment was located in New York County, New York.

40. After being actively recruited, Mr. Bradin began working for the Company in May 2019 as a Business Consultant.

41. While working for the Defendants, and before the discriminatory events outlined below, Mr. Bradin received praise and positive reviews from his supervisors. In fact, shortly after arriving at the Company, Mr. Bradin was inducted into the Defendants' President's Club for his monumental contributions to the Company and for achieving 205% of his sales plan.

42. Appallingly, Mr. Bradin's upward trajectory came to a screeching halt after he developed depression and anxiety as a direct result from the death of his 36-year-old brother from COVID-19.

43. In March 2020, Mr. Bradin's mother, father, and brother as well as his brother's wife and two children contracted COVID-19. After a harsh battle with the pandemic, Mr. Bradin's brother tragically passed away in April 2020. Due to this death, Mr. Bradin began having symptoms of depression and anxiety which he shared with Defendant Finkel.

44. Due to this anxiety of contracting COVID-19, in the summer of 2020, Mr. Bradin explained to Finkel that he did not feel comfortable commuting to the office. Initially, Finkel allowed Mr. Bradin to work from his New York City apartment, however in September 2020, Finkel required Mr. Bradin to commute to the Defendants' office located in Garden City, Long Island.

45. While working at the office, Mr. Bradin noticed that the Defendants' basic COVID-19 precautions (i.e. mask wearing) were not being followed by his colleagues and supervisors, increasing his anxiety.

46. On or about November 11, 2020, in light of the increasing number of COVID-19 cases in New York, as well as his mounting anxiety, Mr. Bradin requested a reasonable accommodation, that he be allowed to work from home.

47. When Mr. Bradin made his request, Defendant Finkel expressed his dissatisfaction with the accommodation, but relented and allowed Mr. Bradin to work from home. However, *two days* later, Finkel placed Mr. Bradin on a Performance Improvement Plan ("PIP").

48. According to Finkel, one of the reasons Mr. Bradin received a PIP was because Mr. Bradin did not meet expectations of one Request for Proposal ("RFP") per week. However, this

was obviously discriminatory as at the time Finkel issued the PIP only 19 out of 112 Business Consultants averaged one RFP per week.

49. Upon information and belief, of the 93 Business Consultants who did not meet the expectations of one RFP per week, Mr. Bradin was the only one who received a PIP.

50. Due to his increasing anxiety and panic attacks, Mr. Bradin took FMLA leave from on or about November 17, 2020 until December 14, 2020.

51. In response to Mr. Bradin taking FMLA leave, the Defendants retaliated against him by removing a lucrative account from Mr. Bradin that he had been working on for several months. Specifically, Defendants removed Stoney Creek Services from Mr. Bradin's pipeline.

52. When Mr. Bradin asked Defendant Finkel's manager if the removal of the Stoney Creek Services account was due to the FMLA leave, he was told that he was taken off the deal because the Defendants did not know when he would return and because of his PIP. However, Mr. Bradin's FMLA paperwork clearly stated when he would return to work making one of the given reasons demonstrably false.

53. Upon information and belief, Mr. Bradin's share of the Stoney Creek Services deal was given to a poorly performing employee who was non-disabled and/or an employee who had not taken FMLA leave.

54. Moreover, the Defendants' other reason for removing the account is clearly retaliatory as taking away accounts from Mr. Bradin's pipeline would make it *more difficult* for him to correct the issues in his PIP.

9

55. Approximately *30 days* after his return from FMLA, Defendants terminated Mr. Bradin.

56. Mr. Bradin was terminated on or about January 18, 2021.

57. At the time of his termination, Mr. Bradin was living in New York County.

58. Plaintiff was terminated due to his disability.

59. Plaintiff was terminated because he went out on FMLA leave.

60. Defendants knew of discriminatory conduct and failed to take immediate and appropriate corrective action.

61. Defendants treated non-disabled employees more favorably by not subjecting them to the discriminatory conduct outlined above.

62. The Plaintiff was terminated from his employment for reporting Defendants' discriminatory conduct.

63. Upon information and belief, Mr. Bradin was replaced by a non-disabled employee.

64. Upon information and belief, the Plaintiff was replaced someone outside of his protected class.

65. Defendants have treated the Plaintiff unequally and less well than other employees because of his disability.

66. Employees outside Plaintiff's protected classes have and continue to be treated more favorably than Plaintiff.

67. Upon information and belief, Defendants disciplined and terminated its disabled employees far more often than its non-disabled employees.

68. Plaintiff was unlawfully discriminated against, on the basis of his disability in violation of the NYCHRL.

69. Employees outside Plaintiff's protected class were treated more favorably than Plaintiff.

70. Plaintiff was treated less well than similarly situated employees in violation of the NYCHRL.

71. Defendants retaliated against Plaintiff due to the complaints he made to Defendants regarding their discriminatory treatment.

## **DEMAND FOR JURY TRIAL**

72. Plaintiff demands a trial by jury on all claims in this action.

## FIRST CLAIM FOR RELEF AGAINST THE DEFENDANTS AND EACH OF THEM
### *Retaliation under the Family and Medical Leave Act of 1993*

73. The Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

74. Defendants engaged in a course of conduct, as outlined above, in retaliation for the Plaintiff exercising protected rights under the FMLA.

75. By engaging in such retaliation, Defendants violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*

76. As a proximate result of Defendants' retaliation against the Plaintiff for exercising his protected rights, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

77. As a further proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

## SECOND CLAIM FOR RELEF AGAINST DEFENDANTS
### *Discrimination under the NYSHRL*

78. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

79. The New York State Human Rights Law Provides that it shall be unlawful discriminatory practice:

> For an employer… because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, or marital status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

80. Defendants discriminated against Plaintiff on the basis of Plaintiff's disability in violation of NYSHRL.

81. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section NYSHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

82. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

83. Defendants have acted with malice or reckless indifference to the Plaintiff.

### ***THIRD CLAIM FOR RELEF AGAINST DEFENDANTS***
*Retaliation under the NYSHRL*

84. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

85. By the actions described above, among others, Defendants retaliated against Plaintiff for making protected complaints regarding discrimination on the basis of disability

86. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

87. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

88. Defendants have acted with malice or reckless indifference to the Plaintiff.

### FOURTH CLAIM FOR RELEF AGAINST DEFENDANTS
*Aiding and Abetting Under the NYSHRL*

89. Plaintiff repeats, reiterates and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

90. The New York State Human Rights Law provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

91. Defendants violated the section cited herein by aiding, abetting, inciting, compelling, and coercing the above discriminatory and unlawful conduct.

### *FIFTH CLAIM FOR RELEF AGAINST DEFENDANTS*
*Discrimination Under the NYCHRL*

92. The Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

93. The New York City Human Rights Law provides it shall be unlawful discriminatory practice:

> For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service or alienage or citizenship status of any person (1) To represent that any employment or position is not available when in fact it is available; (2) To refuse to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment.

94. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8 §8-107(l)(a) by discriminating against Plaintiff based upon his disability.

95. As a result of Defendants' conduct alleged in this complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings, benefits, employment opportunities, other financial loss and non-economic damages.

96. By reason of Defendants' discrimination, Plaintiff is entitled to all remedies available for violations of NYCHRL.

### SIXTH CLAIM FOR RELEF AGAINST DEFENDANTS
*Retaliation Under NYCHRL*

97. The Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

98. The Administrative Code of the City of New York, states that it shall be unlawful discriminatory practice for any employer to

> retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter.

99. By the actions described above, among others, Defendants retaliated against Plaintiff for making protected complaints regarding discrimination on the basis of race, national origin, and/or age.

100. As a proximate result of Defendants' retaliation, Plaintiff has suffered compensatory and other consequential damages and expenses.

101. As a further proximate result of Defendants actions, Plaintiff suffered, and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish, and damage to her reputation.

102. Defendants' conduct was perpetrated with a conscious disregard of Plaintiffs' rights.

### SEVENTH CLAIM FOR RELEF AGAINST DEFENDANTS
*Aiding and Abetting Under NYCHRL*

103. Plaintiff repeats, reiterates and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

104. The New York City Administrative Code Title 8 §8-107(6) provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

105. Defendants violated the section cited herein by aiding, abetting, inciting, compelling, and coercing the above discriminatory and unlawful conduct.

### EIGHTH CLAIM FOR RELEF AGAINST DEFENDANTS
*Employer Liability Under NYCHRL*

106. The Plaintiff repeats, reiterates, and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

107. The New York City Administrative Code Title 8 §8-107(13) provides:

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        (1) the employee or agent exercised managerial or supervisory responsibility; or

        (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

108.    Due to the above provision, the entity defendant is liable under the NYCHRL.

### *REMEDY*

**WHEREFORE**, Plaintiff requests a judgment against the Defendants:

a. Declaring that the Defendants have violated the aforementioned statutes;

b. Preliminary and permanent injunctions against Defendants and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. Awarding future income to Plaintiff in an amount to be proven at trial, representing all loss of future earnings, including reasonable and expected increases, loss of retirement income, diminution in Plaintiff's prospective social security benefits which will be

  computed over the Plaintiff's prospective statistical life expectancy, and all other benefits the Plaintiff would have expected to earn during the Plaintiff's lifetime had it not been for Defendant's unlawful discrimination;

d. Awarding damages to the Plaintiff to make the Plaintiff whole for any economic losses suffered as a result of such unlawful employment practices;

e. Awarding statutory penalties as may be available;

f. Awarding Plaintiff compensatory damages for mental and emotional distress, pain and suffering in an amount to be proven at trial;

g. Awarding Plaintiff liquidated damages;

h. Awarding Plaintiff attorneys' fees and costs and expenses incurred in the prosecution of the action;

i. Awarding pre and post-judgment interest as provided by law; and

j. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the s' unlawful employment practices.

Dated: New York, New York
   September 24, 2021

                Respectfully submitted,
                LAW OFFICES OF WILLIAM CAFARO

                _____
                Amit Kumar, Esq.
                *Attorneys for Plaintiff*
                108 West 39th Street, Ste. 602
                New York, New York 10018
                (212) 583-7400
                Akumar@CafaroEsq.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
NITZAN BRADIN,                                                                                    Case Number:

                Plaintiff,

    -v-

COADVANTAGE RESOURCES INC., COADVANTAGE
RESOURCES 23 INC. and BRIAN FINKEL,

               Defendants.
----------------------------------------------------------------------X

**COMPLAINT WITH JURY DEMAND**

LAW OFFICES OF WILLIAM CAFARO
*Attorneys for Plaintiff*
108 West 39th Street, Ste. 602
New York, New York 10018
(212) 583-7400